# APPEAL OF MARK WATSON.

[ESTATE OF MARY WATSON, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADEL-PHIA COUNTY.

Argued March 25, 1889—Decided April 8, 1889.

[To be reported.]

(a) A testatrix bequeathed one fourth of her residuary estate to a trustee to hold and invest the principal sum, and from time to time as the interest should be received, to pay the same to a son M. during life, and after the decease of said son to pay the principal sum "over to the lawful child or children of the said M., if more than one, share and share

Statement of Facts.

alike; any deceased child leaving lawful issue, such issue to take [per stirpes], and in the event of my said son M. dying in my lifetime, or without leaving any such lawful child, . . . . then the same to go or be paid over as hereinafter provided in case of a legatee dying in my life-time: "

1. In such case, the trust created was not a dry trust whereby the cestui que trust became entitled to the principal of the fund for life, or for any other period; nor was he entitled to have it paid to him for life upon giving security under the act of May 17, 1871, P. L. 269.

2. "We do not think this act was intended to destroy active trusts, and to require the courts to hand over such estates to the tenants for life, upon giving security or otherwise. . . . . It is sufficiently objectionable when confined within its proper limits. . . . . It is an act which the courts, and especially the Orphans' Court, cannot administer with too much care: " Per Mr. Chief Justice PAXSON.

3. In the case of life estates with remainders over, there may be instances in which the remaindermen may not be entitled for fifty years or more: in such instances we do not see how anything less than a first mortgage upon property worth at least double its amount would be adequate security: Per Mr. Chief Justice PAXSON.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and MITCHELL, JJ.

No. 149 January Term 1886, Sup. Ct.; court below, No. October Term 1881. O. C.

On April 1, 1885, the account of Thomas Bradfield, trustee, etc., under the will of Mary Watson, deceased, was filed. On the adjudication thereof, it was made to appear as follows:

Mary Watson died December 14, 1876, leaving a will dated November 13, 1876, duly admitted to probate, wherein she directed her estate, real and personal, not otherwise specially disposed of, to be converted into money and to be divided into four equal parts or shares, one of which was bequeathed by the sixth paragraph of the will as follows:

"And the remaining one equal fourth part or share I give and bequeath unto my friend Thomas Bradfield, of the city of Philadelphia, attorney at law, his heirs, executors and administrators forever, in trust, nevertheless to have and to hold the same for the uses and purposes following, to wit: To have, hold and invest the principal sum so received as aforesaid in good real estate securities and keep the same so invested, and from time to time, as the interest, income and profits shall be

got in and received, to pay the same over to my said son Mark
Watson, during all the term of his natural life, and after the
decease of my said son Mark, to pay the principal sum of said
one-fourth part or share over to the lawful child or children
of the said Mark Watson, if .more than one, share and share
alike; any deceased child leaving lawful issue, such issue to
take and receive the part or share his or her parent would
have received and taken if living; and in the event of my
said son Mark dying in my lifetime, or without leaving any
such lawful child or children, or lawful issue of any deceased
child or children, then the same to go or be paid over as here-
inafter provided in case of a legatee dying in my lifetime."

Under the foregoing provisions, Mark Watson made claim
to the principal of said trust share, upon the ground that the
trust was a dry trust, and, if not, that the said principal should
be paid to him under the act of May 17, 1871, P. L. 269, upon
his entering security for the same as required by said act.

The auditing judge, on May 20, 1885, filed an adjudication
denying the claim made on behalf of the cestui que trust, who
thereupon filed exceptions averring that the court erred:

1. In not declaring said trust to be a dry trust and awarding
the fund to claimant absolutely.[1]

2. In not awarding said fund to the claimant, upon the
entry of security under the provisions of the act of May 17,
1871.[2]

3. In not declaring and decreeing the trust under the will of
the decedent, in favor of the claimant, inoperative and void.[3]

On July 18, 1885, the exceptions having been argued before
the court in banc, they were dismissed by the following opin-
ion, ASHMAN, J.:

The trust in this case can be held to be executed only upon
the ground that the first beneficiary takes the absolute estate.
If his interest is for life only, the protection of those in re-
mainder will require the intervention of the trustee. Its
extent is, however, very clearly defined by more than one rule
of interpretation. We may refer to the single principle which
was quoted in Yarnall's App., 70 Pa. 342, that "any form of
words sufficient to show that the remainder is to go to those
whom the law points out as the general or lineal heirs of the

first taker, will enlarge the estate for life of the first taker to an estate tail by implication." The trust here is for the son for life, with remainder to his children and to their issue, and if he shall die without leaving children or their issue, then to the surviving children of the testatrix. The word "children" is used in a sense wholly different from that of "heirs" or "issue," and, as a word of purchase, can have no effect upon the life estate. The remaining question as to the payment of the fund, notwithstanding the trust, to the tenant for life, upon the entry of security under the act of May 17, 1871, was decided adversely to the petitioner in McCann's Est., 16 Phila. 270.

The exceptions are dismissed.

The exceptant thereupon took this appeal, assigning as error:
1–3. The dismissal of his exceptions.[1 to 3]

*Mr. DeForrest Ballou*, for the appellant:

The entire estate is personalty, money to be held and invested by the trustee for the benefit of the trust estate. But the only active duty upon the trustee is to collect the income and pay it to the cestui que trust during life, and to pay the principal after his death to such persons as would have taken the same had he been given an absolute estate and died intestate, the testatrix fixing no object for the trust, spendthrift or otherwise, and restricting the remainder to no particular person or persons, or for any particular object.

1. When there is only a naked trust; when the control and management of the estate is given into the hands of the cestui que trust, or no clear intention is apparent to exclude him, although the first limitation is in trust for his life only, the use is executed by the statute, the trust is merely nominal, and the whole estate, legal and equitable, is vested in the cestui que trust. This is the doctrine of Barnett's App., 46 Pa. 392, affirmed and enlarged upon in Dodson v. Ball, 60 Pa. 492 ; Megargee v. Naglee, 64 Pa. 216 ; Yarnall's App., 70 Pa. 335; Ogden's Appeal, 70 Pa. 501; Tucker's App., 75 Pa. 354.

2. It may be contended that the words, child or children, are used in the place of heirs at law, or similar terms, and therefore the trust is active ; but this argument is met and

refuted by Potts's App., 30 Pa. 170, and referred to in Yarnall's App., 70 Pa. 341, which holds that, in a will, "Any form of words sufficient to show that the remainder is to go to those whom the law points out as the general or lineal heirs of the first taker, will enlarge the estate for life of the first taker to an estate tail by implication."

3. But if it should be held that the trust is an active trust, then the cestui que trust is entitled to take the principal of the estate, upon the entry of security under the act of May 17, 1871, P. L. 269. The act is very broad and meets the present case. We are unable to see what sound argument can be advanced at all denying that right: See dissenting opinion of Penrose, J., McCann's Est., 16 Phila. 280.

*Mr. Charles L. Lockwood*, for the appellee:

1. The trust has useful purposes to serve, namely: The proper care of the principal and the preservation of the estates of the ultimate takers until they are ascertained upon the death of the cestui que trust: Eachus's App., 91 Pa. 105; Keene's Est., 81 Pa. 133; Phillips's App., 80 Pa. 472; Fidelity Co.'s App., 5 W. N. 513; Ash's App., 80 Pa. 497; Rea v. Girard L. Ins. Co., 16 W. N. 49.

2. Nor is the cestui que trust entitled to take the principal and give security under the act of 1871. While that act applies to bequests of "increase, profits and dividends," and relates to "trustees," it does not apply where the principal fund is bequeathed to the trustee, and only such income as the trustee shall collect, is given to the cestui que trust. The act was not intended to destroy trusts, nor to deprive trust estates of the care of trustees over investments: McCann's Est., 16 Phila. 270.

Opinion, Mr. Chief Justice Paxson:

The second assignment raises the only question in this case. It was as follows: "The learned court erred in not awarding said fund to said claimant, upon the entry of security under the provisions of the act of May 17, 1871." It requires but a glance at the will of Mary Watson to see that the trust created in favor of the appellant was a special active trust. The trustee is required by the sixth paragraph of said will to "hold

and invest the principal sum so received as aforesaid in good real estate securities and keep the same so invested, and from time to time, as the interest, income and profits shall be got in and received, to pay the same over to my said son Mark Watson, during all the term of his natural life, and after the decease of my said son Mark, to pay the principal sum of said one fourth part or share over to the lawful child or children of the said Mark Watson, if more than one, share and share alike ; any deceased child leaving lawful issue, such issue to take and receive the part or share his or her parent would have received and taken if living ; and in the event of my said son Mark dying in my lifetime, or without leaving any such lawful child or children, or lawful issue of any deceased child or children, then the same to go to or be paid over as hereafter provided in case of a legatee dying in my lifetime." The appellant claims that this is a dry trust, and upon entering security to protect those in remainder, he is entitled to receive the corpus of the estate, under the provisions of the act of May 17, 1871. Said act is as follows : " Whenever any personal property, or the increase, profits or dividends thereof, has been or shall hereafter be bequeathed to any person for life, or for a term of years, or for any other limited period, or upon a condition or contingency, the executor or executors, administrator with the will annexed, or trustee or trustees under such will, as the case may be, shall deliver the property so bequeathed to the person entitled thereto, upon such person giving security in the Orphans' Court having jurisdiction of the accounts, in such form and amount as, in the judgment of the court, will sufficiently secure the interest of the person or persons entitled in remainder, whenever the same shall accrue or vest in possession ; and any married woman availing herself of the benefits of this act shall have power as a feme sole, to bind her separate estate and property, by any obligation given by her, as security under this act."

We are very clear that the case in hand does not come within the provisions of this act. It is a perversion of terms to call this a dry trust. If there is anything clear in the will of Mary Watson it is that she never intended the appellant to touch a dollar of the corpus of the estate. The trustee is to invest the trust fund and pay over the income to him for life,

with remainder over. We are to presume she had good reasons for this provision; she may have intended it as a spendthrift trust. There is no gift to the appellant of the corpus for life, or for any other period. Hence, how is it possible for the court below to award the money to him as "the person entitled thereto?" We do not think this act was intended to destroy active trusts, and to require the courts to hand over such estates to the tenants for life, upon giving security or otherwise. If it was so intended it is the most vicious piece of legislation ever conceived by the mind of man. It is sufficiently objectionable when confined within its proper limits. It was called for by no public need, and was probably nursed into life by some one who had a special end to accomplish, and could only do so by the passage of a general law. It is an act which the courts, and especially the Orphans' Court, cannot administer with too much care. In cases coming fairly within its provisions it may be enforced. In the case of life estates with remainders over, there may be instances in which the remaindermen may not be entitled for fifty years or more. In such instances we do not see how anything less than a first mortgage upon property worth at least double its amount, would be adequate security. This was the rule which the writer enforced when a judge of the Orphans' Court, and it usually resulted in a failure of the application.

The decree is affirmed and the appeal dismissed at the costs of the appellant.

